Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 294 | **DATE** | 1/16/2002 |
| **CASE TITLE** | Balzanto vs. Nicholas Cuda, Ltd. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendants' motion (Doc 18-1) for summary judgment is granted in its entirety. Plaintiff's motion (Doc 23-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 1 7 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 32 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED-ED3 02 JAN 16 PM 4:06 | JAN 1 7 2002 date mailed notice | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN M. BALZANTO,	)
	)	DOCKETED
	Plaintiff,	)	JAN 1 7 2002
	)
vs.	)	01 C 294
	)
NICHOLAS CUDA, LTD. PROFIT SHARING	)
PLAN, NICHOLAS CUDA, LTD., NICHOLAS	)
CUDA, and CAROL S. KETTERING,	)
	)
	Defendants.	)

## MEMORANDUM OPINION

This matter is before the court on the parties' cross motions for summary judgment. For the reasons stated below, Defendants' motions are granted and Plaintiff's motions are denied.

## BACKGROUND

The following facts are undisputed. On February 1, 1986, Defendant Nicholas Cuda, Ltd. formed the Nicholas Cuda Ltd. Profit Sharing Plan (the "Plan"). Nicholas Cuda ("Cuda") was named Plan Administrator and MidAmerica Federal Savings Bank was named Plan Trustee. The Plan was funded solely by employer contributions; participants were not allowed to make contributions. Under the terms of the Plan, each participant had a separate account containing his share of the employer profit sharing



contributions plus any earnings. The Plan Trustee was responsible for investing money contributed to the Plan on behalf of Plan participants.

The Plaintiff, John Balzanto ("Balzanto") began employment with Nicholas Cuda, Ltd. on January 16, 1990 as a Certified Public Accountant. Balzanto became a Plan participant on January 1, 1991. Over the existence of the Plan, Cuda and Balzanto have been the Plan's only participants. While a Plan participant, Balzanto knew that his money was invested in various stocks, including Dell and IBM. Balzanto was aware that these particular stocks performed well in the 1997-1999 Plan years, but performed less strongly in the 2000 Plan year.

On or about September 30, 1999, Balzanto terminated his employment with Nicholas Cuda, Ltd. As of that date, Balzanto was fully vested in his benefit under the Plan. On November 7, 1999, Carol Kettering ("Kettering"), the Plan's third party administrator, sent Balzanto a letter with attached Plan distribution notices and election forms. This letter provided Balzanto with instructions on how to receive a distribution from the Plan and the procedure necessary to make a claim for the distribution. The letter contained an account valuation of Balzanto's account as of December 31, 1998. His account balance as valued on that date was $115,693.44. Anticipating that his distribution would be higher if it were based on the valuation date of December 31, 1999, Balzanto informed Kettering that he would not take a distribution until he had that valuation.

After their conversation and beginning on January 5, 2000, Balzanto made a number of requests for various types of information pertaining to his benefit under the

Plan. Balzanto was provided with his account valuation as of December 31, 1999, $160,675.68, on August 19, 2000. Cuda also faxed to Balzanto a summary of the Plan's annual financial statement on August 30, 2000. On October 25, 2000, Cuda signed Special Valuation and Plan Termination resolutions creating daily valuation dates as of October 3, 2000 for distributions requested from the Plan after that date and terminating the Plan as of November 15, 2000. Balzanto submitted his distribution forms on November 14, 2000. Pursuant to the change from annual valuation dates to daily valuation dates, the distribution he received was based on a daily valuation date rather than the annual valuation date of December 31, 1999. He ultimately received a distribution of $115, 760.90.

Balzanto filed suit on January 18, 2001. Balzanto's complaint contains four counts, all of which are based on the Employee Retirement Income Security Act of 1974 ("ERISA"). In Count I, Balzanto claims that the Defendants failed to provide him with requested plan documents in violation of section 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4). In Count II, Balzanto claims that Defendants breached their fiduciary duty in that they prevented him from making an informed request for distribution by allegedly failing to respond to his requests for information. Count III is also a breach of fiduciary duty claim; Balzanto claims that Cuda breached his fiduciary duty by changing the valuation date for distribution from annual to daily plan valuation dates. Finally, in Count IV Balzanto claims that Cuda violated ERISA's anti-cutback rule by changing the valuation date. All claims against Kettering were dismissed from this action on

March 22, 2001. The remaining Defendants and Balzanto have now filed cross-motions for summary judgment on all counts.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.R. Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant." Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record, the court must draw all reasonable inferences in favor of the non-movant; however, the court is "not required to draw every conceivable inference from the record -- only those
- 4 -

inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

For cross-motions for summary judgment, each movant must individually fulfill the stringent requirements necessary to obtain summary judgment. United Transportation Union v. Illinois Central R.R., 998 F. Supp. 874, 880 (N.D. Ill. 1998). By filing cross-motions for summary judgment, the parties do not waive trial by the merits, but each party merely believes that the court should grant it judgment without trial, unless the judge disagrees. Miller v. LeSea Broadcasting, Inc., 87 F.3d 224, 230 (7th Cir. 1996). Indeed, upon receipt of cross-motions for summary judgment, the court is not required to grant summary judgment as a matter of law for either side. Brownlee v. City of Chicago, 983 F. Supp. 776, 779 (N.D. Ill. 1997). Rather, the court will evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant. Brownlee, 983 F. Supp at 779; Boozell, 979 F. Supp. at 670; United Transp. Union, 998 F. Supp. at 880. With these principles in mind, the court turns to the instant motions.

## DISCUSSION

The parties have filed cross motions for summary judgment on all four Counts in Balzanto's complaint, and the court will address their arguments as to each Count in turn.

**I.   Count I: Failure to provide information in violation of ERISA § 104(b)(4).**

In Count I, Balzanto claims that the Defendants are subject to fines under section 502(c) of ERISA, 29 U.S.C. § 1132(c)(1), because they refused to provide him with

information in violation of ERISA § 104(b)(4). Under section 502(c) of ERISA, a plan administrator who "fails or refuses to comply" with a request for documents or information required to be supplied under Title I of ERISA "by mailing the material requested" to the participant "within 30 days of the request" may be fined up to $110 per day beginning with the 31st day after the request is made. 29 U.S.C. § 1132(c)(1). Section 104(b)(4), in turn, requires that:

> [t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated.

29 U.S.C. § 104(b)(4). Throughout the year 2000, and beginning on January 5, 2000, Balzanto made written requests for information a number of times. Balzanto asserts that Defendants are subject to penalties beginning thirty days from the first request on January 5, 2000 and ending on some date since the commencement of this lawsuit which he claims was the first time he was provided with the information he requested. The court analyzes his claim by considering each of his requests.

Because the parties have done so in their papers, the court considers the three requests Balzanto made on January 5, 2000, February 14, 2000, and March 28, 2000 together. Relying on <u>Anderson v. Flexel, Inc.</u>, 47 F.3d 243, 248 (7th Cir. 1995), Balzanto argues that, even though these requests did not specifically ask for copies of the documents listed in section 104(b)(4), they put Defendants on "clear notice" that these

- 6 -

were the types of documents Balzanto was requesting. Defendants, on the other hand, dispute that these requests put them on such "clear notice" and further assert that these requests were not covered by section 104(b)(4) at all. Instead, Defendants state that these requests were covered by section 105(a) of ERISA, which concerns statements of participant's accrued benefits. 29 U.S.C. § 1025(a).

Having reviewed Balzanto's January 5, 2000 – March 28, 2000 requests and the parties' papers, the court rejects Balzanto's argument that these letters put Defendants on "clear notice" that Balzanto was requesting documents of the type covered by section 104(b)(4). Rather, the court agrees with Defendants that these particular requests constitute requests for a statement of his accrued benefits and thus fall under section 105(a) and not section 104(b)(4). Because Balzanto did not bring any claims under section 105(a), his requests for information covered by that provision are not at issue here. However, even if Balzanto had claimed that Defendants violated section 105(a), his claim would not succeed. Section 105(a)(1) requires a plan administrator to furnish, upon request, a participant with a statement indicating the total benefits accrued. 29 U.S.C. § 1025(a)(1). Defendants supplied Balzanto with such a statement in September of 1999 and then again on August 19, 2000. Under section 105(b) of ERISA, Balzanto was only entitled to one statement indicating his accrued benefits per year. 29 U.S.C. § 1025(b). With regard to his requests for a statement of his accrued benefits, Balzanto received what ERISA entitles him to.

Balzanto's attorney sent another request for information via a letter dated July 20, 2000. In the letter's second paragraph, Balzanto's attorney references paragraph 22 of

the Summary Plan Description and requests that Balzanto be provided with "all forms needed to process a claim." In the following paragraph, the letter references paragraph 27 of the Summary Plan Description, and then states that pursuant to that paragraph: "Mr. Balzanto would like to examine all Plan documents, including a summary of the Plan's annual financial reports. Mr. Balzanto is particularly interested in knowing what the value of his Plan portion was as of December 31, 1999. Documents concerning this issue are specifically requested." Kettering responded to Balzanto's July 20, 2000 letter with a letter dated August 19, 2000. Included with Kettering's letter were new distribution request forms for Balzanto to process his claim which included Balzanto's account balance as of December 31, 1999.

Although he admits that Defendants provided him with the specific documents he requested in his July 20, 2000 letter, Balzanto contends that Defendants' response to this letter was nonetheless inadequate under section 104(b)(4). He claims that the part of this July 20, 2000 letter which states, "Mr. Balzanto would like to examine all Plan documents..." constitutes a request for copies of documents under section 104(b)(4) and that, accordingly, Defendants were obligated to send Balzanto copies of all Plan documents. The court disagrees.

Subsection (a) of paragraph 27 of the Summary Plan Description clearly informs the Plan's participants that they have the right to examine all Plan documents, including annual reports and other specific documents, without charge at the plan administrator's office and at other specified employment locations of the employer. Subsection (b) then makes clear that participants are entitled to copies of plan documents should the

participants request such copies from the plan administrator and that the plan administrator may charge the participant for such copies. Having read the Summary Plan Description, Balzanto's attorney knew that if he wanted copies of documents, he had to request copies. Indeed, he did specifically request certain documents in that same letter. Yet, he merely indicated a desire to examine other Plan documents. Tracking the language in paragraph 27 of the Summary Plan Description, Defendants cannot be fairly held to conclude that Balzanto's expression of his desire to examine documents is equal to a request for copies of all such documents. This is especially so when those documents could be voluminous and the plan administrator can charge the participant for copies. Thus, the court concludes that Defendants adequately responded to Balzanto's attorney's July 20, 2000 letter.

Balzanto's next request for information was his letter dated September 8, 2000. In this letter, Balzanto made specific requests for copies of specific Plan documents. These specific requests are clearly covered by section 104(b)(4) and Defendants were thus obligated to mail them to Balzanto under section 502(c)(1). Although Balzanto asserts that he never received a response to his September 8, 2000 request, Cuda states that he sent Balzanto the requested information via certified mail on October 3, 2000. October 3, 2000 was within thirty days of Balzanto's request. Cuda includes independent evidence that he sent this information – a copy of the envelope sent by him to Balzanto and stamped "refused." This evidence rebuts Balzanto's unsupported assertion that his September 8, 2000 request was not responded to. Because he mailed

the requested information to Balzanto on October 3, 2000, Cuda is not liable under section 502(c)(1). 29 U.S.C. § 1132(c).

Even if Cuda's October 3, 2000 response was inadequate and violated section 502(c), this court would not be required to impose penalties. See Hite v. Biomet, Inc., 38 F. Supp.2d 720, 735-736 (N.D. Ind. 1999); McCroskey v. United Airlines, Inc., 1999 WL 169602, at *3-5 (N.D. Cal. Mar. 19, 1999) (deciding not to impose penalties even though question of fact existed as to whether section 104(b)(4) request was made); Tucker v. Gen. Motors Ret. Program, 949 F. Supp. 47, 56 (D. Mass. 1996). The decision to impose penalties under section 502(c) of ERISA rests solely in the discretion of the district court judge. Ames v. Am. Nat'l Can Co., 170 F.3d 751 (7th Cir. 1999); Jackson v. E.J. Brach Corp., 937 F. Supp. 735, 738 (N.D. Ill. 1996). The purpose of section 502(c) is to induce compliance with requests for information. Winchester v. Pension Comm. of Michael Reese Health Plan, Inc., 942 F.2d 1190, 1193 (7th Cir. 1991). Given this purpose, a primary focus is on the administrator's conduct, not its impact on the participant. Ziaee v. Vest, 916 F.2d 1204, 1210 (7th Cir. 1990). Other factors courts consider when determining whether to assess penalties under section 502(c) include: "bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and document withheld, and the existence of any prejudice to the participant." Jackson, 937 F. Supp. at 741.

Consideration of all these factors in this case indicates that penalties would not be appropriate even if Defendants did not respond properly to Balzanto's September 8, 2000 request on October 3, 2000. Cuda's attorney sent Balzanto's attorney all relevant

requested documents via messenger on October 31, 2000. See e.g., Hackett v. Xerox Corp. Long-Term Disability Income Plan, 2001 WL 1643832, at *20 (N.D. Ill. Dec. 13, 2001) (stating ERISA's disclosure provisions do not require production of all documents relevant to a plan). Therefore, even if Defendants had not complied by October 3, 2000, they surely complied by October 31, 2000. Although Balzanto claims that he did not receive all the documents he requested until this litigation, he fails to identify which documents were not received and to explain why or how such documents would be relevant to his election to obtain a distribution. Balzanto had the forms necessary to request the distribution he desired – a distribution of his account balance as valued on December 31, 1999 – at least since August 19, 2000. He chose not to submit the forms at that time. Accordingly, he presents no evidence that he was prejudiced by Defendants' October 31, 2000 response. See Hackett, 2001 WL 1643832, at *21; Hite, 38 F. Supp.2d at 736. While the October 31, 2000 response falls outside ERISA's thirty-day requirement, it does not amount to a long or unreasonable delay justifying penalties. Additionally, though Balzanto makes allegations that Cuda was acting in bad faith and purposefully delaying his responses to Balzanto's requests, these allegations are not supported by the evidence. The evidence indicates that, as to each information request, Defendants at most complied with Balzanto's request or, at a minimum, made good faith efforts to comply with them. Therefore, the court grants Defendant's motion for summary judgment with regard to Count I and denies Balzanto's motion.

## II. Counts II & III: Breach of Fiduciary Duty

In Counts II & III, Balzanto claims that Defendants breached their fiduciary duties. Before addressing the substance of Balzanto's breach of fiduciary duty claims, the court addresses a preliminary matter. Defendants' argue that Balzanto fails to sufficiently state his claims for breach of fiduciary duty because the relief he requests is not recoverable under ERISA. Defendants focus on one of Balzanto's forms of requested relief in his prayer for relief – his request that he receive the difference between the value of his account as of December 31, 1999, $160,675.68, and the $115,760.90 actually distributed to him. In Counts II and III Balzanto specifically alleges that he is bringing those Counts under section 409 of ERISA. 29 U.S.C. § 1109. As Defendants correctly point out, section 409 of ERISA restricts plan participants who sue for breach of fiduciary duty to equitable relief on behalf of the plan, with no recourse to individual monetary damages. Mertins v. Hewitt Associates, 508 U.S. 248, 255 (1993). Thus, Balzanto may not recover his requested relief under section 409.

Balzanto concedes that a participant may only seek relief under section 409 of ERISA on behalf of the plan, but argues that there is no such restriction in section 502(a)(3) of ERISA. It is well established that section 502(a)(3) allows participants to seek individual relief for fiduciary breaches so long as that relief is equitable in nature. Bowerman v. Wal-Mart Stores, Inc., 226 F.3d 574, 592 (7th Cir. 2000); Filipowicz v. Am. Stores Benefit Plans Comm., 56 F.3d 807, 812 (7th Cir. 1995); Ames. Legal remedies, such as money damages, are not "appropriate equitable relief" under section 502(a)(3). Bowerman, 226 F.3d at 592. The court notes that Balzanto does not allege

in Counts II and III of his complaint that he has brought his breach of fiduciary duty claims under section 502(a)(3). However, in the interest of judicial economy and because he cites to section 502 generally in the introduction of his complaint, the court will accept his contention that he has brought his breach of fiduciary duty claims under section 502(a)(3). Having done so, the next question is whether the relief Balzanto seeks can fairly be categorized as equitable.

Balzanto argues that he seeks equitable relief in the form of restitution or a constructive trust. A constructive trust is clearly a form of equitable relief. In addition, restitution is regarded as an equitable remedy when sought as a remedy for breach of fiduciary duty under ERISA, because the fiduciary concept is equitable. Bowerman, 226 F.3d at 592; Health Cost Controls of Ill. v. Washington, 187 F.3d 703, 710 (7th Cir. 1999); Clair v. Harris Trust and Savings Bank, 190 F.3d 495 (7th Cir. 1999). Defendants argue that Balzanto is merely characterizing his relief as restitution but that he really seeks compensatory damages. Defendants call the court to go beyond Balzanto's characterization of his relief. The court need not do so, however, because, as set forth more fully below, the court finds that Balzanto's claims of breach of fiduciary duty fail substantively and, therefore, Balzanto is not entitled to any relief.

ERISA establishes duties of loyalty and care for fiduciaries as well as the obligation to act solely in the interest of the benefit plan and its participants and beneficiaries. Neuma v. E.I. DuPont De NeMours and Co., 133 F. Supp.2d 1082, 1085 (N.D. Ill. 2001). Specifically, section 404(a) of ERISA requires plan fiduciaries to

discharge their duties "solely in the interest of the participants and beneficiaries" and according to the documents and instruments governing the plan. 29 U.S.C. § 1104(a)(1)(D). That section further requires that plan fiduciaries must use the "care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Central to a fiduciary's responsibilities is the duty to disclose material facts that affect participants' interests which the fiduciary knows the participant does not know and which the participant needs for his protection. Neuma, 133 F. Supp.2d at 1089.

When reviewing claims of breach of fiduciary duty under ERISA, courts apply the arbitrary and capricious standard so long as the plan document grants discretionary authority to the administrator. Chojnacki v. Georgia Pac. Corp., 108 F.3d 810, 814 (7th Cir. 1997) (citing Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989)); Dabertin v. HCR Manor Care, Inc., 2001 WL 1646022, at *8 (N.D. Ill. Dec. 20, 2001). The parties do not dispute that the Plan in this case granted Cuda discretionary authority, so the arbitrary and capricious standard applies and the court must defer to Cuda's decisions. Balzanto urges this court to apply less deference in evaluating Cuda's decisions because Cuda's role as employer and the fact that Cuda was the only other Plan participant created a conflict of interest. The court declines to do so. The existence of a conflict of interest does not change the standard of review that is applied; the presence of a conflict of interest is, however, one factor to consider in determining whether a plan fiduciary acted arbitrarily or capriciously. Chojnacki, 108 F.3d at 815. Additionally, the

court presumes that a fiduciary acted neutrally unless the plaintiff shows, by providing specific evidence of actual bias, that there is a significant conflict. Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan, 144 F.3d 1014, 1020 (7th Cir. 1998). With these legal principles as guidance, the court turns to Balzanto's breach of fiduciary duty claims.

Balzanto alleges that Cuda breached his fiduciary duties under the Plan in two ways. First, he alleges that Cuda breached his fiduciary duties because he failed to provide Balzanto with certain information. Second, he claims that Cuda breached his fiduciary obligations under the Plan by changing the Plan's valuation dates.

The court first addresses Balzanto's breach of fiduciary duty claim based on failure to disclose information. He alleges that Cuda's delay or failure to provide him with certain information prevented him from electing a distribution based on his December 31, 1999 account balance. He further alleges that Cuda was obligated to explain to Balzanto why he was going to change the Plan's valuation date from annual dates to special dates and whether Cuda had the authority to do so pursuant to the Plan. Balzanto bases much of this claim on allegations that Defendants failed to comply with their ERISA disclosure obligations. Because the court found that Defendants complied with their disclosure obligations under ERISA, Balzanto's breach of fiduciary duty claim cannot survive on this basis. Moreover, even if the court had not found compliance, as discussed above, Balzanto does not identify in his papers which documents he did not receive and how those documents were necessary for him to protect his interest in the Plan. Balzanto similarly fails to explain how or why the information regarding Plan

valuation dates and Cuda's authority to change them was necessary for him to make an election for distribution. Nor does he present the court with evidence that not having this information prevented him from electing a distribution or injured him in any other way.

Indeed, the evidence indicates that Balzanto had the only information necessary for him to make an election for distribution based on his December 31, 1999 account balance in hand by August 19, 2000: the distribution forms sent by Kettering and based on his December 31, 1999 account balance. On August 19, 2000, Balzanto was also informed that the valuation dates would be changed from annual to special. Having the necessary distribution forms in hand and the knowledge that the valuation dates under the Plan would be changed, one would reasonably expect Balzanto to elect distribution based on his December 31, 1999 account balance soon thereafter. He could have done so at any time before the valuation dates were changed, yet he chose to wait. As Balzanto's own papers reveal, he voluntarily chose to wait because he wanted to weigh the risk of foregoing his December 31, 1999 account balance for a potentially higher one based on the new valuation dates. He waited too long. The Plan adopted daily valuation dates in October 2000; Balzanto filed his distribution forms on November 14, 2000. Once he submitted the forms, he promptly received the distribution he was entitled too on November 16, 2000, a distribution based on a daily valuation date. Therefore, the evidence does not support a conclusion that Cuda failed to provide Balzanto with any information necessary to his making this election. On the contrary, Balzanto was provided with the only information he needed to elect his desired distribution.

Second, Balzanto alleges that Cuda violated his fiduciary duties under the Plan when he changed the Plan's valuation dates from annual valuation dates to daily valuation dates. Cuda clearly had the authority to change the valuation dates from annual to daily under the Plan. The Plan's Adoption Agreement states that the Plan's earnings shall be allocated to a participant's account balance as of the preceding valuation date less subsequent distributions, withdrawals, forfeitures, and insurance premium payments. The Prototype Plan Document in section 15.34 authorizes the Plan Administrator to set additional valuation dates. That section provides that valuation dates will be the "last day of each Plan Year, any additional date specified in the Adoption Agreement, and such other dates as shall be directed by the Plan Administrator. On October 25, 2000, Cuda signed the Special Valuation and Plan Termination resolutions which changed the Plan to daily valuation dates as of October 3, 2000 and terminated the Plan as of November 15, 2000. His conduct was in accordance with the authority vested in him by the Plan. 29 U.S.C. § 1104(a)(1)(D).

Although Balzanto contends that Cuda changed the valuation date to insulate himself, as the only other Plan participant, from a potential loss by shifting such loss to Balzanto, the evidence does not support this contention. Cuda has advanced legitimate reasons for changing the valuation dates. Cuda explains that, by changing from annual to daily valuation dates, each of the Plan's participants would proportionately share in any investment gains or loss. Balzanto's share in the Plan was 25.356% and Cuda's was 74.644%. Additionally, Cuda changed the valuation dates in response to increased market volatility in 2000. Furthermore, Balzanto himself stated that the devaluation of

the Plan assets was caused by the downturn in the stock market. Moreover, Balzanto could have chosen to elect a distribution based on December 31, 1999 in August or September 2000. Accordingly, Balzanto has not shown that Cuda's decision to change the Plan valuation dates caused a loss to the Plan while unjustifiably enriching Cuda. Nor has he shown that Cuda's decision was arbitrary or capricious. Cf. Holian v. Leavitt Tube Co., 1989 WL 44570 (N.D. Ill. April 28, 1989); MacDonald v. Pan Am. World Airways, Inc., 859 F.2d 742 (9th Cir. 1988).

In sum, Balzanto has failed to show that there is a genuine issue of material fact for trial as to whether Cuda breached his duties as Plan fiduciary. The evidence does not support a conclusion that Cuda's decision to change the Plan's valuation date was arbitrary and capricious. Nor does the evidence support a finding that Cuda prevented Balzanto from electing to take a distribution based on the December 31, 1999 valuation. Although Balzanto makes allegations that Cuda's decisions were based on a desire to benefit himself to Balzanto's detriment, he does not present the evidence to back these allegations. Balzanto's breach of fiduciary duty claims, therefore, do not survive summary judgment.

### III. Count IV: ERISA's anti-cutback rule

In Count IV, Balzanto claims that Defendants violated the anti-cutback rule of ERISA § 204(g) by changing from annual to daily plan valuation dates. Cuda argues that the change from annual to daily plan valuation dates did not violate section 204(b) of ERISA because that section only prohibits decreases in benefits caused by an "amendment of the plan" and the Plan was not amended here to allow for the change in

valuation dates. See 29 U.S.C. § 1054(g); <u>Krumme v. Westpoint Stevens, Inc.</u>, 143 F.3d 71 (2nd Cir. 1998); <u>Holian v. Leavitt Tube Co., Inc.</u>, 1989 WL 44570 (N.D. Ill. 1989); <u>MacDonald</u>. Balzanto presented this court with no opposition to Defendants' arguments. The court therefore grants the Defendants' motion for summary judgment on Count IV.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in its entirety. Plaintiff's motion is denied.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: January 16, 2002